(No. 89-CC-1501

ORAL WILCOXEN, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 13, 1994.*

ORAL WILCOXEN, *pro se,* for Claimant.

ROLAND W. BURRIS, Attorney General (TERRENCE T. ROCK, Assistant Attorney General, of counsel), for Respondent.

OPINION

SOMMER, J.

The Claimant, an inmate with the Illinois Department of Corrections, seeks judgment against the Respondent, State of Illinois, in the sum of $40,000, arising from injuries allegedly sustained by the Claimant when he slipped and fell in the shower at the Graham Correctional Center in Hillsboro. The Claimant's complaint alleges that in the morning of May 17, 1988, he left his cell to go to the shower. He attempted to turn the light on in the shower room, but the light would not come on. He alleges that he went to the housing unit control center and told a correctional officer that the light was not working. He contends that he was told by the correctional officer that it was known that the light was not working, but that the Claimant should still use the shower. The Claimant alleges that when he went to the shower, he stepped on a piece of soap, fell and injured his right elbow and back.

At the hearing the Claimant testified that he had just arrived at this cellhouse and had been medicated with a parasite preventative. He had been ordered to take a shower to wash the remnants of that medication off of his body.

The shower room was approximately six feet by five feet with a concrete floor and concrete walls. The floor was level, but there was a berm approximately six inches high that had to be stepped over to get into the shower. Water from the shower flowed up against the berm to prevent flooding. There was a light attached to the ceiling in the shower. The Claimant described the light as being a single bulb sticking out of the ceiling but screwed into an electrical socket.

There was no one in the shower when the Claimant went in. There were others present who had taken showers, and others were apparently waiting to use the shower. When an inmate enters the shower, he has to push a button to start the water running. Hot and cold adjustments of the shower water are done by correctional officers at some other location.

The Claimant estimated that he had used this particular shower approximately 10 times, and had not had difficulty. The Claimant was not in a hurry, but wanted to get the medication off of his body because it was itching.

The switch to the shower room was on the outside of the room, and was operated with a key. The key was like an ordinary house key. It functioned as a dual key to the inmates' rooms and to turn the shower light on and off. This special kind of switch is found in penitentiaries so that persons cannot turn switches on and off with their fingers. As the Claimant approached the shower, the light was off. The door to the shower was open, and the light in the room was dim, according to the Claimant. The Claimant attempted to turn the light on, but failed. The Claimant "hollered" at the officers, and they heard him because they raised their hands in a salute to indicate that they had heard him. The Claimant testified that the guards told him to go ahead and take a shower.

He stepped over the berm and on to a piece of soap that threw his feet out from under him, and he fell on the concrete. He testified that he hurt his back and his right arm. Other inmates helped him to his bunk.

The Claimant contends that the correctional officers would not send him to seek medical care for a day and a night, and he testified that the next morning he went on sick call and showed his injuries to prison medical personnel.

There was swelling, and x-rays were taken of the right elbow, back and head. The Claimant was taken to the doctors in Centralia, and ultimately underwent surgery on two separate occasions.

The Claimant was a sixty-year-old man who had spent most of his adult life as an inmate with the Illinois Department of Corrections. He contended that his back and right arm bothered him, and that his right arm was hurting during the hearing. He described the pain as "stinging." He testified that he had headaches all the time, and had been treated for the headaches with Anacin and Motrin.

The Claimant contended that prior to the injury, he could lift, but he couldn't lift at the time of the hearing. He used to drive trucks but he cannot drive trucks now because it involves sitting straight all the time. The Claimant did not believe he could work in sheet metal as he had in the past. His right arm had not been injured prior to this incident, and he had had no back injuries before this incident. The Claimant contends that the headaches he has had since the injury were greater than those he had experienced prior to the injury.

The Claimant stated that on past occasions when he had taken a shower, the shower room floor was normally wet. He had seen small pieces of soap on the floor previously. The Claimant stated that as he approached the shower room, he did not look at the floor. He stepped over the berm or curbing at the entrance to the shower room, and when he put his weight down he fell. The Claimant states that he was shown the piece of soap he fell on, and it was approximately 2 inches long and half an inch thick.

William A. Whitley was called by the Respondent as a witness for the State. Whitley is the maintenance super-

visor at the institution in question. He testified that light bulbs that expire are repaired through a work order. Whitley stated that he reviewed the work orders for the month of May, 1988. Whitley testified that he had no work order for a burned out light bulb in a shower from May 15, 1988, through May 21, 1988, when asked that question by the Commissioner. Whitley testified that he could not say whether there were light bulbs burned out in the shower on the day in question.

Under questioning by the Commissioner, Whitley testified that it is not unusual for it to take five days to replace a burned out light bulb after a work order. Whitley testified that it was possible for a light bulb to go out on the eighteenth or nineteenth of May that would not be repaired until the twenty-fifth. Usually work orders are dated on the day that they are sent in. Sometimes the work orders do not bear a date. Whitley did not know how long it took work orders to get to him. When Whitley receives a work order to replace a bulb with no date, he does not know how long the light bulb had been out.

Whitley testified that all light bulbs in the shower rooms have a protective cover. Under the cover there is a single light bulb. Work orders must be utilized to change defective light bulbs. Guards are not allowed to "mess" with any of the electrical or maintenance needs of the institution. The covers on the lights in the showers can only be removed through the use of special equipment.

Correctional officer Matthew Wells was called and testified on behalf of the Respondent. Wells did not remember any incident where the Claimant claimed to have been hurt falling down in the shower. The witness testified concerning the degree of light that exists in the shower rooms. There was a window in the shower room. The witness stated that, in his opinion, there was defi-

nitely sufficient light to take a shower because "there is as much light in that shower with the light off as there is in the shower in my house at home." Photographs marked as exhibits 1, 2 and 3, were identified, marked and admitted into evidence showing the hallway and different views of the shower room or a shower similar to the one in which the Claimant contended he was injured; but there was no indication whether the light was on or off in these photos.

On cross examination by the Claimant, Officer Wells testified that he did not remember refusing a request by the Claimant to take the Claimant to the hospital. Officer Wells did not recall the Claimant ever complaining of having been injured. Officer Wells stated that it was the policy of correctional officers, when medical attention is requested, to allow the inmate to declare a "medical emergency." If the inmate elects to declare a "medical emergency" and this is not confirmed by medical staff, then the inmate will receive disciplinary action initiated by the medical staff. Wells testified this is the procedure he would have followed had the Claimant requested medical assistance and been willing to declare a "medical emergency." Also, if an inmate stated that he was injured an incident report would have been made.

During the testimony of Officer Wells, it was noted that an order had been entered by the Commissioner against the Respondent to comply with a request to produce. It was further noted that the response to the request to produce did not contain a single incident report or any indication that the incident alleged by the Claimant ever occurred.

Briefs were not submitted by either party.

Though there was some confusion by the Claimant as to the date of the injury, the complaint and the testimony

indicate that the Claimant was injured on the seventeenth of May. In his deposition, he stated that he was injured on the nineteenth of May—a date which he said was mistaken when he testified at his hearing.

The Department Report states that the Claimant was received at Hillsboro on May 18, and the Medical Report indicates the Claimant underwent reception lab work by the nurses on May 18. Notations on the medical notes from May 18 include "Rt. forearm." The Claimant's complaint indicates that he was injured on the seventeenth but continued to ask for treatment until the twenty-first, when he was seen. In his testimony, the Claimant said that he had medical treatment the day after the injury.

Institutional medical records submitted as a part of the departmental report indicate that on May 21, 1988, the Claimant presented himself complaining that he fell down "on the ground" and injured his elbow. The medical records are hard to interpret, but it appears that the Claimant's right arm was diagnosed as having an infected wound at the right elbow with swelling. It further appears that on May 24, 1988, that x-rays were taken of the elbow which was then acutely swollen due to an acute infection of the wound and bursitis of the right elbow. On May 26, 1988, a complaint of vertigo was noted. On May 27, 1988, the medical record showed that the Claimant returned from St. Mary's Hospital with his right elbow in a sling, after having arthroscopic surgery the day before. On May 31, 1988, the medical record speaks to an elbow abscess with minimal drainage. On June 13, 1988, he had a debridement of scar tissue at St. Mary's Hospital. On July 22, 1988, his elbow was said to be healing well. No history, surgical notes, or hospital records were a part of the State's answer to production or contained in the depart-

ment report. The department report reflects a total absence of "incident reports."

The Respondent offered no other evidence. Neither party filed a brief.

The Claimant's theory of liability is based on the facts as recalled by the Claimant. The Claimant testified that he was seriously injured because of the lack of light in the shower. He contended that he sustained injuries to his right arm, his back, his head, was knocked unconscious, and had to be assisted by other inmates back to his cell or room. The Claimant contended that when he was first able to do so, he requested medical assistance which was initially, arbitrarily denied by Officer Wells. Wells testified emphatically that any inmate requesting medical treatment had to be given the option of declaring a medical emergency. In that event, Wells testified emphatically that he would have seen to it that the Claimant was delivered to medical personnel at the institution immediately. Apparently the Claimant did not wish to declare a medical emergency, and he stated that he waited until the following day before he was given any medical attention. Although the medical records submitted by the State in its departmental report are scant, it clearly appeared that the condition for which the Claimant's elbow was treated was an abscess resulting from what was believed to be an infected wound. The abscess was subsequently drained and repaired through two separate surgical procedures. The scant medical notes reflect that the Claimant's history was that he had fallen to the ground, and he did complain of vertigo on May 26, 1988.

There appear to be no incident reports, inmate injury reports, investigation reports, results of grievance procedures, or any other documentation tending to either substantiate or refute the Claimant's testimony.

The Claimant testified there was a bare light bulb protruding from the ceiling of the shower. The maintenance engineer testified that this would definitely not be allowed to occur, and that all the shower lights were covered by protective covers that could be removed only with special equipment.

The Claimant testified that the light from outside the shower and through the small window provided little lumination, but he could dimly see the shower apparatus. Officer Wells testified that the light from outside the shower and the shower room window provided as much light as he had in his shower at home, and that there was enough light to see to take a shower.

The Claimant contended that he sustained back injuries and has had problems with unusually severe headaches since his injury was sustained. The medical records do not reflect complaints of back pain or headache pain relative to the onset of the Claimant's complaints.

The Claimant had spent most of his adult life as an inmate, and knew the system. Officer Wells was emphatic in his testimony that he would have permitted the Claimant to obtain immediate medical treatment had the Claimant opted to declare a medical emergency. The risk to an inmate in declaring a medical emergency is that if he attends the medical unit and the medical personnel determine that the need for medical assistance was not "an emergency" a disciplinary ticket would be generated. The Claimant contended that despite serious injuries, he was simply refused medical attention.

The Claimant, additionally, made conflicting statements as to the date he was injured and how many days he went without treatment. The departmental report

indicated that the Claimant arrived on May 18, though the Claimant states he was injured on May 17. Interpreting the matter in favor of the Claimant, it is possible he arrived on May 17. He stated that he went on sick call the next day, but the departmental reports and medical reports indicate that he had reception lab work by the nurses that day, which is given to all new arrivals. The report of this lab work has the cryptic note "Rt. forearm," with no mention of treatment. No injury was noted to the Claimant's elbow.

The Claimant's elbow did not become an issue until May 21 when he reported that he fell on the ground and was diagnosed as having an infected wound in the elbow. He was then observed not to be in distress or pain. The presence of swelling was noted. Acute swelling was noted on May 24. The Claimant testified to acute swelling the day after his fall when he went on sick call.

There is no independent evidence that the Claimant was injured as indicated. There were no incident reports or other internal documentation of the fall. Officer Wells remembered nothing of the sort. There was no work order for the shower light readily evident, and there was conflicting evidence as to whether there would be sufficient light in the shower if the bulb was burnt out.

The many conflicts in the Claimant's testimony and pleadings as to when he was injured and when he obtained medical care, coupled with there being no independent evidence of the Claimant's alleged fall or of the circumstances he states, compels this Court to find that the Claimant has not proven his case.

Under the law, the Claimant bears the burden of proof. He is required to offer testimony and other evidence that would tend to prove his theory of recovery by

the preponderance of the evidence. We find that the Claimant has not proven his case by the preponderance of the evidence. Accordingly, it is the ruling of this Court that this claim is denied.